Joseph Wrisbon PICKENS, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–85–0847–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

May 22, 1986.

Gerald A. Burks, Galveston, for appellant.

Michael J. Guarino, Galveston County Dist. Atty., Susan W. Burris, Galveston County Asst. Dist. Atty., Galveston, for appellee.

Before SAM BASS, COHEN and DUNN, JJ.

## OPINION

DUNN, Justice.

Appellant pled guilty to the offense of forgery enhanced with one prior conviction, and was sentenced to 10 years confinement. The right to appeal the denial of his motion to suppress was preserved.

In his sole ground of error, appellant contends that the trial court erred in denying his motion to suppress evidence obtained as a result of an unlawful arrest.

The facts elicited at the hearing on appellant's motion to suppress show that on June 14, 1985, shortly after noon, appellant was seen walking along the outside corridor of the Seahorse Motel in Galveston by David Kiff, a Galveston police officer on regular patrol. Kiff testified that appellant was walking slowly and uncertainly in both directions along the corridor, "and all the while he was looking around as if he were looking for somebody that might be watching him, for whatever reason." Kiff also saw appellant lean over the bannister and apparently speak to someone in the parking lot below. After waiting for appellant to come down to the parking lot, Kiff saw him driving an automobile through the lot "very slow," and saw a woman approach the car. At that time, Kiff "figured something was going on," and followed appellant with the intent to perform a routine license number check on the automobile. Kiff testified that appellant attempted to evade him by putting his automobile in reverse gear and driving to another part of the parking lot. Kiff testified that, at this time, "there was enough to check him out." Appellant approached Kiff upon the latter's request and asked if he could help him. In response to questioning, appellant identified himself and stated that he was going to see about renting a motel room. After finding out that appellant had no driver's license with him, Kiff called on his radio for an additional unit. He testified that there had been a history of burglaries at the Seahorse Motel, and that he informed appellant that, for this reason, the police needed to "check him out."

After the arrival of Officer Thomas in response to Kiff's call, appellant was handcuffed and placed in Thomas' patrol car. Kiff testified that this was done because the officers "wanted to make sure if anything was broken into, and putting him in there, there was no way he could take off." At some point, appellant's name was broadcast over the police radio and information was received that appellant had been arrested three weeks before for forgery.

While appellant remained in Thomas' patrol car, Kiff and Thomas searched the motel rooms to see if any burglaries had occurred. After finding nothing to indicate criminal activity by appellant, the officers removed him from the patrol car. Kiff testified that they did this with the intent to let appellant get into his car and leave, but Thomas stated that appellant was still being detained and that appellant's car was going to be towed.

At this time, Thomas raised the backseat of his patrol car and found a picture identification card bearing appellant's photograph, another i.d. card, and a check. The i.d. cards were in the name of, and the check was made payable to, "Jack Johnson." The check payable to Jack Johnson was the basis of appellant's prosecution.

Although appellant primarily contends that his *arrest* was unlawful, the

State urges that appellant was merely being detained for investigative purposes. However, the handcuffing of appellant and his placement in the patrol car is equivalent to arrest. *See* Tex.Code Crim.P.Ann. art. 15.22 (Vernon 1977). The threshold inquiry, therefore, is whether the arresting officer had sufficient reasonable suspicion to initiate the investigatory stop that preceded the arrest and the discovery of evidence.

■ It is well established that an officer may briefly stop a suspicious individual in order to determine his identity or to maintain the status quo while obtaining further information. *Johnson v. State*, 658 S.W.2d 623 (Tex.Crim.App.1983). However, in order to justify such a detention, there must be a reasonable suspicion, based on specific, articulable facts that, in light of the officer's experience and general knowledge, lead to the reasonable conclusion that criminal activity is afoot and that the detained person is connected with the activity. If the activity relied upon by the officer is as consistent with innocent behavior as it is with criminal activity, a detention based on those activities is unlawful. See *Armstrong v. State*, 550 S.W.2d 25, 30–31 (Tex.Crim.App.1976) (op. on reh'g).

A critical factor in evaluating the validity of an investigative stop is the motivation of the officer involved. The testimony of the officer as to the reasons for making the stop is crucial in making this determination. *United States v. Hammack*, 604 F.2d 437, 440 (5th Cir.1979).

■ Here, Kiff testified that appellant's behavior aroused his suspicions because "there's a way of acting like he was up to something at the hotel." Appellant's behavior, i.e., looking over his shoulder while walking along the corridor, leaning over the bannister to speak with someone in the parking lot, and driving slowly through the lot, is consistent with innocent behavior. These specific facts, as articulated by Kiff, are insufficient to create a reasonable suspicion that some activity out of the ordinary was occurring or that the activity was related to a crime. *See Johnson v. State*, 658 S.W.2d at 626.

Kiff also testified that the Seahorse Motel had a history of burglaries and that appellant put his car in reverse and drove away when he saw Kiff approach him. While this behavior by appellant might be construed as "out of the ordinary," the Court of Criminal Appeals has recently held that the facts that the events occurred in a high-crime area and that the accused attempted to leave as officers approached were not sufficient, in and of themselves, to constitute criminal activity and validate an investigatory stop. *Comer v. State*, —— S.W.2d —— No. 265–84 (Tex.Crim.App., April 9, 1986) (not yet reported). Because appellant's activities were as consistent with innocent behavior as with criminal activity, the investigatory stop was unlawful. *Shaffer v. State*, 562 S.W.2d 853 (Tex.Crim. App.1978). The evidence recovered from the police vehicle and introduced against appellant at his trial was obtained as a result of this unlawful detention, and it is inadmissible. *Baldwin v. State*, 606 S.W.2d 872 (Tex.Crim.App.1980).

The State cites cases holding that evidence voluntarily discarded by a defendant is abandoned, and therefore admissible against him. *See Gomez v. State*, 486 S.W.2d 338 (Tex.Crim.App.1972); *Miller v. State*, 458 S.W.2d 680 (Tex.Crim.App.1970); *King v. State*, 416 S.W.2d 823 (Tex.Crim. App.1967). These cases are distinguishable because they do not involve the abandonment of property following an illegal detention.

Appellant's single ground of error is sustained.

The judgment of the trial court is reversed, and the cause is remanded.